UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CHARLES FRANKLIN MICHAEL                                    Plaintiff

v.                                         Civil Action No. 3:15-CV-00071-RGJ

AARON SMITH,                                              Defendant
*WARDEN*

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Petitioner, Charles Franklin Michael's ("Michael") objects to Magistrate Judge Regina Edwards' ("Magistrate Judge") Report and Recommendation ("R&R") [DE 41] denying his petition for writ of habeas corpus made under 28 U.S.C § 2254 ("Petition"). [DE 45]. Respondent, Aaron Smith did not respond, and the time for doing so expired. The parties also filed supplemental briefing at the request of the Court. [DE 54, DE 55]. And Michael moved to file an objection [DE 56], to which the Warden responded [DE 57]. This matter is now ripe, and for the reasons stated below the Court **GRANTS** Michael's Motion to File Objection [DE 56], **DENIES** Michael's Objections [DE 45; DE 56] and **ADOPTS** the R&R [DE 41] except that the Court will certify an appeal on the first and second grounds in Michaels' Petition.

### I.      Background

Michael made two confessions during two separate interviews with law enforcement. *Michael v. Commonwealth*, 2012-SC-000097, 2013 WL 1188052, at *1-2, (Ky. March 21, 2013). Michael confessed in both interviews, although the second confession was more detailed and admitted to more serious charges. [DE 17-2 at 108-09]. Michael pleaded guilty

1

to sodomy in the first degree and sex abuse in the first degree in October 2011. [DE 41 at 336]. Before entering his plea, Michael moved to suppress his confessions arguing coercion.

The factual basis for Michael's suppression motion and Petition stems from two interviews conducted on the day of his arrest. In the first interview, which began around 9:00 a.m. and lasted around two hours, Michael appeared voluntarily. [DE 41 at 337]. Detective Barbara Roby ("Roby") and Social Worker Sandra Newton ("Newton") interviewed Michael and advised him of his *Miranda* rights, which he waived orally and in writing. [*Id.*].

After approximately nine minutes of discussing background information, including where Michael was living and whether he was currently on any substances, Michael referenced a prior allegation of sexual abuse made by his stepdaughter, Dorothy, against him to explain why he was living apart from his wife. [DE 38-1 at 287–88]. Detective Roby then asked whether Michael had stayed in the same home with children since the prior incident, to which Michael eventually admitted that he had. [*Id.* at 289–92]. At about 24 minutes into the interview, Detective Roby and Newton began to shift the interview from the prior allegations to the current allegations of abuse, including asking whether when he visited his children in their current home, and whether Michael saw his children in "short" dresses or without underwear. [*Id.* at 293–94].

At about 29 minutes into the interview, Detective Roby made the first direct reference to the new allegations of abuse, which Michael denied. [*Id.* at 296–97]. In response to Michael's denial, Detective Roby stated: "Now, sometimes we try to hide stuff because we're ashamed of what we've done, but there's help out there for you, but you're not going to get that help unless you admit to what you've done and you admit that you've got a problem. . . .

But you sitting here and lying to us and not admitting to it is not helping you any." [*Id.* at 297].

At about 34 minutes into the interview, Michael stated that one time, while rubbing Dorothy's back he also "rubbed her back down her legs over her butt." [*Id.* at 299]. He then agreed with Detective Roby's characterization that he rubbed "in between her legs and in her vagina area." [*Id.*]. Michael stated that this has "happened a few times" and later agreed with Detective Roby's statement that it happened three times. [*Id.* at 299–31]. Detective Roby accused Michael of touching Dorothy and his daughter, Brittany, on other occasions, both of which Michael denied. Detective Roby stated that he did not believe Michael and told him, "That's not true, that's not true. You're lying to me now." [*Id.* at 301]. Detective Roby stated that Brittany was acting out, and Michael continued to deny any other touching beyond three incidents with Dorothy. [*Id.*]. Yet he agreed with certain facts described by Detective Roby about the incidents with Dorothy, including that he may have gotten an erection and as a result, his penis may have touched her. [*Id.* at 299–306].

About an hour-and-a-half into the interview, Detective Roby made the first of several statements that Michael alleges are coercive. Detective Roby stated: "As of right now, you are not allowed to be around any of the children." [*Id.* at 323]. Michael responded, "yeah," and asked how the children were doing and whether they were happy. [*Id.*]. Two minutes later, Detective Roby made a second allegedly coercive statement: "You're going to continue to not have any contact with your children just until you admit to everything, you're not having contact with your children." [*Id.* at 324]. Michael did not respond.

Approximately one hour and forty minutes into the interview, Michael stated again that he had only touched Dorothy on the already identified three occasions. Then, Newton made the third allegedly coercive statement:

> You know, before you can see any of your kids you will have to complete a sexual assessment treatment program, and if you're not honest with me you'll never get to see them and I'll make sure of that. So until you can sit here and tell us what really happened, nobody here is going to get help – nobody – and especially those little girls and you won't get to see them.

[*Id.* at 325].

About a minute later, Michael responded, "Okay. As far as I know, what she said is true. [T]hat's silly." [*Id.*]. Detective Roby again asked Michael how many times he put his penis in Dorothy's mouth. Michael did not respond, and Detective Roby then stated, "If you want to tell us then why are you stalling. The quicker you tell us. [T]he quicker this is going to be over." [*Id.* at 325]. About an hour and forty-two minutes into the interview, Michael stated that Dorothy "might have kissed" his penis. [*Id.* at 326]. When Detective Roby asked for further details, Michael stated he would prefer to continue the interview in a more professional setting, like "a sexual abuse place." [*Id.*]. Detective Roby responded that "You need to do this today, okay? You need to do this now. What all has happened between you and [Dorothy] Get it off your chest now so that you can (INAUDIBLE)." [*Id.*]. Michael, in response to Detective Roby's question, stated that "The very first time she did touch my penis." [*Id.* at 326]. Michael also stated that was the only time and the two other incidents he only touched her. [*Id.* at 326–27].

Soon after, Detective Roby made the fourth allegedly coercive statement:

> You're going to continue the rest of your life without seeing your children, because you want to bottle this up and you're too embarrassed and you just want to throw your time away with your children for the rest of your life because you don't want to talk about it.

[*Id*. at 331]. Michael did not directly respond to this statement but a few minutes later asked: "[c]an you tell me what is going to happen?"  [*Id*. at 332].  Detective Roby responded that when Michael's case goes to the grand jury, she will have to tell them that Michael "cooperated a little bit, but . . . didn't cooperate completely."  [*Id*.].  The interview concluded a few minutes later, around 11:00 a.m.

Michael left the police station and was arrested soon after.  He was then interviewed a second time from 12:32 p.m. to 2:22 p.m. by Detective Lynn Davis ("Davis") and by Detective Roby.  [DE 56-1, Partial Transcript of Second Interview, DE 48, Audio of Interviews, Disc 2].  Before the second interview, Michael was re-*Mirandized* by Davis and agreed orally and in writing to proceed with the interview.  [DE 41 at 340; DE 48, Audio of Interviews].  The audio and partial transcript of the second interview then reflects that Michael spoke only with Davis for about the first 35 minutes of the interview. [DE 56-1 at 451].  About 34 minutes into the second interview, the follow exchange occurred between Michael and Davis before Roby participated in the interview:

> Davis: Did you ever put your penis into her rectum?
>
> Michael: No, sir.
>
> Davis: Maybe just a little?  Or maybe just a curious…I know that you wouldn't hurt her but . . .
>
> Michael: Right, no.  I knew that that would hurt her.
>
> Davis: Did you try just a little?
>
> Michael: There's no way that, that you could even attempt  . . . without it hurting her. I mean she's got a tiny butt. You couldn't even try it without it . . .
>
> Davis: Ok.  How many times would you say you've had your finger in her butt or did that just turn into the routine?

Michael: I don't think that I actually . . . If I penetrated her butt with my finger, it was only like maybe half an inch . . . or something, just when I was rubbing it and just pressed it a little bit in there.

Davis: Did that turn into part of a routine?

Michael: Yeah that was probably incorporated . . .

[DE 56-1 at 451, DE 48, Audio of Interviews].  About a minute and a half after this exchange between Michael and Davis, Detective Roby joined the interview.  *Id*.

In his second interview, Michael elaborated on the allegations that he admitted to in his first interview, including several seriously incriminating admissions involving his behavior toward Dorothy: "(1) he pressed his pinky finger against Dorothy's rectum, perhaps to the point of penetration; (2) he rubbed his penis against Dorothy's buttocks; (3) he touched her vagina with his penis; (4) he ejaculated on her twice; (5) his penis was briefly in her mouth on one occasion; and (6) his penis could have slipped into her rectum on two occasions." [DE 41 at 430 (citing Michael, 2013 WL 1188052, at *2)].  Michael also provided a written confession following the second interview.

The trial court denied the motion to suppress, and in his plea agreement, Michael preserved the right to appeal the trial court's denial of his motion to suppress, which he did. [DE 41 at 341].  The Kentucky Supreme Court denied Michaels' appeal.  [*Id.*].  Based on this denial, Michael filed a *pro se* petition seeking habeas relief under § 2254, [DE 1], which was later supplemented by hired counsel.  [DE 38].

Michael's Petition alleges three grounds for relief: His first two claims allege that his confession was involuntary.  His third claim challenges the quality of the audio transcripts

from his interviews with law enforcement and which the Kentucky Supreme Court relied on in denying his appeal.

The Magistrate Judge found that Michael was not entitled to habeas relief and recommended denying the Petition. [DE 41 at 359]. She also recommended that the Court deny a Certification of Appealability. [*Id.*]. Michael objects to both the factual and legal conclusion in the R&R. Michael's objections fall into several categories and argue that the Magistrate Judge: (1) mischaracterized portions of the interrogation in her Findings of Fact and erroneously determined that the Supreme Court properly found that the first confession was voluntary [Objections 1-8, 14, DE 45 at 367-73, 377]; (2) erred in finding Michael's second confession voluntary [Objection 9, DE 45 at 373]; and (3) erred in finding that Michael did not claim actual innocence so that his claims under *Doyle* and his claims about the corruption of evidence were procedurally defaulted [Objections 10-13, DE 45 at 373-77]. [DE 45].

The Court ordered supplemental briefing on the issue of whether the coercion in the first interrogation had sufficiently dissipated so as to make the second statement voluntary, whether the Kentucky Supreme Court's determination of the admissibility of Michael's incriminating statements made after the coercive statements was a reasonable application of federal law, and whether this issue impacts Michael's petition for writ of habeas corpus, including whether any remedy is still available for the Petitioner to pursue in the state courts. [DE 51]. The parties briefed the issues [DE 54, 55] and Michael moves to submit an additional objection to the Warden's statements from the supplemental briefing that: "the second policy interview was conducted by a different officer . . ." and "[t]he second interrogation as also conducted by a different law enforcement officer." [DE 56].

## II.      Standard of Review

A district court may refer a motion to a magistrate judge to prepare a report and recommendation.  28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1).  "A magistrate judge must promptly conduct the required proceedings . . . [and] enter a recommended disposition, including, if appropriate, proposed findings of fact."  Fed. R. Civ. P. 72(b)(1).  This Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  The Court need not review under a de novo or any other standard those aspects of the report and recommendation to which no specific objection is made and may adopt the findings and rulings of the magistrate judge to which no specific objection is filed.  *Thomas v. Arn,* 474 U.S. 140, 149–50, 155 (1985).

A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic."  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (alterations in original) (citation omitted).  A general objection that fails to identify specific factual or legal issues from the R&R is not permitted as it duplicates the magistrate judge's efforts and wastes judicial resources.  *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  After reviewing the evidence, the Court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations.  28 U.S.C. § 636(b)(1)(C).

## III.     Discussion

Chapter 153 of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Sta. 1214 (1996) ("AEDPA") governs Michael's claim.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA applies to all habeas corpus petitions filed after April 24, 1996 and requires "heightened respect" for legal and factual determinations made by state

courts. *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The pertinent section provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is "difficult to meet and [is a] highly deferential standard . . . ." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks omitted). Legal conclusions made by state courts are also given substantial deference under AEDPA.

The Supreme Court has concluded that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded [*sic*] jurists could disagree that the state court's decision conflicts with this Court's precedents." *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (per curiam) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). As to § 2254(d)(2), a federal habeas court may not substitute its evaluation of the state evidentiary record for that of the state trial court unless the state determination is unreasonable. *Rice v. Collins*, 546 U.S. 333, 341–42 (2006). This subsection applies when a petitioner challenges the factual determinations made by the state court. *See Mitzel v. Tate*, 267 F.3d 524, 537 (6th Cir. 2001) (challenging the state court's determination that the evidence did not support an aiding and abetting suicide instruction); *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001)

(challenge to state court's factual determination that Sheriff has not seen letter before Clark's trial).

A state court decision is not contrary to United States Supreme Court precedent simply because it does not specifically cite Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8 (2002). Indeed, the state court does not even have to be aware of the controlling Supreme Court precedent, so long as neither the reasoning nor the result of the state court decision contradicts that precedent. *Id*. at 8; *Brown v. Bobby*, 656 F.3d 325, 3321 (6th Cir. 2011).

> 1. *The Magistrate Judge did not err in determining that the Supreme Court of Kentucky was not objectively unreasonable in applying* Culombe *and* Lynumn *to the first part of Michael's confession* (Objections 1-8, DE 45 367-72).

Michael objects to the R&R based on alleged mischaracterization of certain facts and the determination that the Supreme Court properly found that the first confession was voluntary. [DE 45 at 373]. "When considering the voluntariness of a confession, we consider the 'totality of the circumstances' to determine whether a statement was the 'product of an essentially free and unconstrained choice by its maker.'" *United States v. Siler*, 526 F. App'x 573, 575 (6th Cir. 2013) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S. Ct. 2041, 36 L.Ed.2d 854 (1973)). This Circuit examines four factors in making that determination: "(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *Id.* (internal citations omitted). "In a federal habeas action, the burden of proving that the confession was involuntary rests with the petitioner," *Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987) (citing *Jurek v. Estelle*, 623 F.2d 929, 937 (5th Cir. 1980) (overruled on other grounds)), and

"voluntariness need only be proven by a preponderance of the evidence." *Id*. (citing *Lego v. Twomey*, 404 U.S. 477 (1972)).

> a.   The Kentucky Supreme Court properly applied *Columbe* and *Lynumn*.

Michael argues that the Magistrate Judge erred in determining that the Kentucky Supreme Court properly applied *Columbe* and *Lynumn*.  [DE 45 at 377].  In the context of a habeas petition, to be entitled to relief, Michael must establish that the Kentucky Supreme Court's application of *Culombe* and *Lynunn* was "objectively unreasonable," rather than merely erroneous or incorrect.  *Williams v. Taylor*, 529 U.S. 362, 365 (2000) ("the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law").

The Magistrate Judge found that the Kentucky Supreme Court's application of *Columbe* was not unreasonable because "[t]he Kentucky Supreme Court [] considered that Michael is highly intelligent; was not under the influence for twenty-four hours prior to the interviews; exhibited no psychological or emotional limitations during the questioning; and was given and waived his Miranda rights orally and in writing before both interviews."  [DE 41 at 347].

The Magistrate also determined that the Kentucky Supreme Court's application of *Lynumn* was not unreasonable when it found that "Michael's circumstances were distinguishable because although law enforcement's comments were coercive, Michael did not make any incriminating statements in response to the coercion."  [*Id.* at 348 (citing *Michael*, 2013 WL 1188052, at *3-5)].

b. The Magistrate Judge properly addressed whether it was unreasonable for the Kentucky Supreme Court to find that law enforcement tactics did not cause Michael's first confession to be involuntary.

Michael objects to the R&R's findings regarding his first confession alleging the Magistrate ignores "that the interrogating detective repeatedly called him a liar, engaged in the coercive interrogation technique of repeatedly putting words in Petitioner's mouth by use of leading questions, police shaming, a promise of freedom in exchange for a confession, police threat of withholding Petitioner's children, manipulation, victim blaming." [DE 45 at 377].

Michael is factually incorrect. The Magistrate Judge addressed at length whether it was unreasonable for the Kentucky Supreme Court to find that these tactics did not cause Michael's statements made before the four coercive statements to be involuntarily. [DE 41 at 351–54]. The Magistrate Judge determined that "[e]ven though the Kentucky Supreme Court focused on the four statements from law enforcement that appealed to Michael's parental instincts, the court also comprehensively summarized these interviews in its opinion." [DE 41 at 353]. The Magistrate Judge also separately assessed these tactics and determined that the Kentucky Supreme Court's determination was not contrary to or an unreasonable application of federal law. In his objections, Michael cites no other authority to establish that the Magistrate Judge's or Kentucky Supreme Court's analyses of this issue was contrary to or an unreasonable application of federal law.

c. Michael's objections to the Magistrate Judge's characterization of certain incriminating statements is overruled.

Michael also objects to the characterization of certain incriminating statements. He asserts that instead of directly making the incriminating statements, as the Magistrate Judge

12

set out in her Findings of Fact, Michael "passively responded" to a "leading question." [DE 45 at 367]. Regardless of the precise terminology used, Michael does not argue that any decision by the Magistrate Judge or the Kentucky Supreme Court turns on the characterization of those statements. Further, even if the Magistrate Judge's Findings of Fact do not clearly articulate the speaker of certain statements, the Court has clarified the speaker in its factual summary. Thus, the Court adopts the R&R as to the voluntariness of Michael's confession before any of the four coercive statements.

### B. The Magistrate Judge did not err in consideration of the Kentucky Supreme Court's analysis of Michael's confession after the coercive statements ([Objection 9, DE 45 at 373).

Michael also objects to the Magistrate Judge's consideration of the second confession. Michael argues that "since the second interview constitutes 'fruit of the poisonous tree'. . . [I]t is subject to suppression with equal or greater force due to it having been the direct product of police illegality." [DE 45 at 373]. The Court understands this objection to be to the voluntariness of the second confession after a finding that coercion was present in the first confession. When there are two confessions and the first is found to be coercive, "[t]he appropriate inquiry in determining the admissibility of [the] second confession is whether the coercion surrounding the first [confession] had been sufficiently dissipated so as to make the second statement voluntary." *United States v. Lopez*, 437 F.3d 1059, 1066 (10th Cir. 2006) (internal citations omitted). "Under Supreme Court precedent, when a prior statement is coerced, the time that passes between confessions, the change in the locations of the interrogations, and the change in the identities of interrogators all bear on whether coercion has carried over into the second confession." *United States v. Hilton*, 625 F. App'x 754, 761

13

(6th Cir. 2015) (internal citations omitted); *see also United States v. Daniel*, 932 F.2d 517, 519 (6th Cir. 1991).

As stated above, Michael made two confessions during two separate interviews with the police. *Michael*, 2013 WL 1188052, at *1-2. The Kentucky Supreme Court first addressed the issue of whether each confession was voluntary. The Court examined the totality of the circumstances for each confession, as well as circumstances which changed between one confession and the next, and found that both confessions were voluntary and admissible. *Id.* at *5-6. To make this finding, the Kentucky Supreme Court engaged in a two-step analysis to determine whether a confession is involuntary: first it must first determine the presence or absence of coercive police activity. *Bailey v. Commonwealth*, 194 S.W.3d 296, 300 (Ky. 2006). If the reviewing court finds the presence of such activity, this meets the threshold that then allows the reviewing court to proceed to the second step of the analysis, which is to examine the totality of the circumstances around the confession. *Id.*

The Kentucky Supreme Court agreed that the four statements objected to by Michael were improper,[1] and that the statements meant that Michael met the threshold requirement for having the totality of the circumstances examined. *Michael*, 2013 WL 1188052, at *5. But when the Kentucky Supreme Court then examined the totality of the circumstances, it found that Michael's statements were voluntary and had not been coerced despite the coercive statements. *Michael*, 2013 WL 1188052, at *5. The Kentucky Supreme Court specifically stated that "the coercive statements did not induce the Appellant's confession." *Id.* The Court then noted that three admissions were made before the coercive statements were ever spoken by law enforcement. *Id.* The Magistrate Judge reiterated this in her findings of fact and

---

[1] Here, the Kentucky Supreme Court found that the four allegedly coercive "comments [] satisfy the threshold requirement that coercive state action be present." *Michael*, 2013 WL 1188052, at *5

conclusions of law, emphasizing that "even Michael's admissions between the third and fourth coercive statements were not made immediately and logically resulted from a separate line of questioning." [DE 41 at 350-351].

After finding that none of Michael's confessions were in response to coercive statements by the police, the Kentucky Supreme Court noted that there was a lapse of time between the first and second interviews where Michael went back to his wife's house, was rearrested by the police, and was then re-Mirandized. *Michael*, 2013 WL 1188052, at *5. The Court went on the examine other factors as to the totality of the circumstances involving both confessions—that Michael was calm, rational, and appeared to understand what was happening, and that there were no indications he was intoxicated (in fact, he denied consuming any alcohol or drugs in the 24-hour period before the interview). The Court also noted that Michael had a high scale IQ of 132 and had undergone sleep-deprivation training when he was in the Marines. *Id.*

As part of its totality of the circumstances analysis, the Kentucky Supreme Court did examine the effect of the improper statements by law enforcement on the entire first confession as well as the second confession. The Kentucky Supreme Court noted that the change in circumstances was decisive, even though the two interrogations were not separated by a long time period. *Michael*, 2013 WL 1188052, at *5. As the Court pointed out, Michael was "released from the first interview, arrested at [his wife's] house, brought back to the police station, re-Mirandized, and questioned." *Id.*

In addition to the break with the first interview, a second police officer, Davis, interviewed Michael along with Roby. *Id.* Michael was also Mirandized for a second time before he asserted that he had held back in his first interview because he did not want to

incriminate himself too soon. *Id*. He then gave a much more detailed and incriminate he Kentucky Supreme Court also examined several other factors in its analysis, which they concluded supported the voluntariness of the confessions. *Id.* at *5-6. The Kentucky Supreme Court considered the fact that Michael showed no sign of being under the influence in either interrogation. *Id.* He did not slur his words and showed no signs of intoxication or fatigue. *Id.* The Kentucky Supreme Court pointed out that despite claims in the suppression motion that he had consumed alcohol and gone without sleep the night before, Michael told the interrogating officer that he had consumed no alcohol or drugs in the 24-hour period before the interrogation. *Id.* at *5. The Court noted the trial court found Michael had no problems with balance in the video tapes of both interrogations. *Id.* It noted Michael had completed sleep deprivation training while in the Marine Corps. Finally, the Court noted that Michael's IQ falls within the "very superior range." *Id*. at *5-6.

Michael argues that the Magistrate Judge erred in her analysis of his second interview because it constituted "fruit of the poisonous tree," and should have been suppressed. [DE 45 at 373]. The Court interprets this as an objection to the voluntariness of the second confession after a finding of coercive statements present in the first interview. But critically here, the confessions from the first interview were not coerced. Although the Kentucky Supreme Court ruled that there were coercive statements by police during the first interview, the Kentucky Supreme Court ruled that the confessions were still voluntary despite the coercive statements given the totality of circumstances. In other words, the Kentucky Supreme Court found that coercive statements were made by the police, but in analyzing the totality of the circumstances, found that these coercive statements did not induce Michael's confession and that the confession was voluntary. *Michael,* 2013 WL 1188052, at *5.

The Kentucky Supreme Court applied United States Supreme Court precedent as well as well as Kentucky state precedent in its decision.   The Court cited *Culombe v. Connecticut* in its decision, stating that when examining the totality of the circumstances, the reviewing court must look at whether the defendant's "will has been overborne and his capacity for self-determination critically impaired." *Michael,* 2013 WL 1188052, at *6 (citing *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)).

That the first confessions were found voluntary and not tainted by coercion is a critical distinction from *Lopez*, which is cited above for the proposition that if a first confession is involuntary due to coercion, the court must examine whether the coercion dissipated before any second confession.  In *Lopez*, the first confession was coerced and found involuntary. 437 F.3d at 1066. The coercion produced the first confession. *Id.*  Here, the coercion did not produce the first confession.  If the first confession had resulted from coercion, then the appropriate inquiry would focus on the voluntariness of the post-*Miranda* statements in the second interview by considering: (1) changes of time between the first and second confessions; (2) change in location of interrogation; and (3) change in interrogator identity. *Oregon v. Elstad*, 470 U.S. 298,  311-12 (1985). Despite finding that the first confession was voluntary, the Kentucky Supreme Court did analyze the foregoing factors and change in circumstances surrounding the second interview as discussed above. The Kentucky Supreme Court analyzed the change in time between the interviews, the change of location in the interviews, and the change in interrogator identity.  Even though Roby was present for some of the second interview, the first 35 minutes were conducted solely by Davis.

The Kentucky Supreme Court reasonably applied federal law to ascertain whether the improper statements from the police tainted the second confession. The Court thus finds the

Magistrate Judge did not err in determining that the Kentucky Supreme Court's analysis of Michael's confession made after the coercive statements, including the second confession, was not contrary to federal law. Michael's objection on this issue is overruled. [Objection 9, DE 45 at 373].

   C. *The Magistrate did not err in finding that Michael's claim on corruption of evidence and violation of Doyle v. Ohio was procedurally defaulted [Objections 10-13, DE 45 at 373-77]. [DE 45].*

Michael objects to the Magistrate Judge's recommendation that Michael failed demonstrate cause and prejudice or actual innocence to overcome procedural default for his failure to raise the corrupted evidence claim below. [DE 45 at 375-77]. The Magistrate Judge found the claim on corruption of evidence procedurally defaulted:

> by failing to raise this issue on direct appeal, Michael procedurally defaulted his claim. Procedural default bars federal habeas review of this claim unless Michael "demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). "Cause" must be something external to the petitioner, *Coleman v. Thompson*, 501 U.S. 722, 753 (1991), and "prejudice" must be so substantial that it undermines the integrity of the entire trial, *United States v. Frady*, 456 U.S. 152, 169-70 (1981). For assertions of "actual innocence," a petitioner must substantiate such claims with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

> While Michael acknowledges his procedural default, he fails to establish cause and prejudice to excuse such default. Michael merely states that a ruling based on uncorrupted evidence is his "constitutional guarantee" and that his claim should proceed because "it has compromised the very ruling of the Kentucky Supreme court on which this petition is based." (DN 18, at p. 14). These statements neither demonstrate an external reason for not raising the claims earlier nor set forth substantial prejudice that undermines the integrity of Michael's proceedings.

> Michael similarly fails to meaningfully allege actual innocence to prove a fundamental miscarriage of justice. Although he alleges that Detective Roby made coercive statements that are omitted from the audio recordings and transcripts, the Court cannot presume a miscarriage of justice based on a

> petitioner's word alone. The Court agrees it is not ideal that the audio
> recordings and the written transcripts of Michael's interviews contain
> inaudible pauses that may have contained dialogue. However, nothing in the
> record demonstrates that the recordings or transcripts reviewed by the trial
> court or the Kentucky Supreme Court included additional statements that
> prove Michael's innocence.

[DE 41 at 355-56].

The Court agrees with the Magistrate Judge that this claim is procedurally defaulted.

Michael  has failed to "demonstrate[] cause for the default and prejudice resulting there from,

or that failing to review the claim would result in a fundamental miscarriage of justice."

*Williams*, 460 F.3d at 806.  Michael argues that the Magistrate Judge did not understand that

he claimed "innocence" during the interviews. [DE 45 at 374]. Actual innocence may excuse

a petitioner's procedural default to prevent a "manifest injustice." *See Coleman*, 501 U.S. at

749–50. To prove actual innocence, conclusory statements are not enough—a petitioner must

"support his allegations of constitutional error with new reliable evidence—whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.  The Magistrate Judge's

determination did take his claim of innocence into account, but correctly found that the only

support in the record for it was Michael's word alone.  [DE 41 at 356].  Michael's claims of

innocence during the interviews were not new evidence.

Michael was alleging for the first time in his petition that the evidence was corrupted

because statements of Detective Roby were missing from the audio recordings and transcripts.

[DE 1 at 12-13]. The Magistrate Judge found that there was no proof that these statements

occurred during the inaudible pauses on the audio recordings other than Michael's allegation

and that Michael failed to develop this claim in his supplement to his Petition when the Court

ordered the Warden to produce the audio. [DE 41 at 356]. The Court agrees with the

19

Magistrate Judge that Michael did not meaningfully develop this argument such that cause and prejudice or actual innocence could be sufficiently demonstrated.

Michael also objects to the Magistrate Judge's recommendation to reject his argument that his confession was obtained in violation of *Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976), which prohibits prosecutorial comment on a defendant's exercise of his Fifth Amendment right to silence. [DE 45 at 375]. Michael argued in his supplement to his petition that his right to silence was violated by law enforcement's threats that they would report Michael's refusal to completely cooperate to the grand jury. [DN 38, at p. 10]. It is not disputed that Michael's claim under *Doyle* was not presented on appeal to the Supreme Court of Kentucky, and thus the procedural default analysis applies. *See Riggins v. McMackin*, 935 F.3d 790, 793 (6th Cir. 1991) ("A state prisoner generally must give the state courts a fair opportunity to remedy any constitutional infirmity in the conviction before seeking relief in a federal court") (citing *Castille v. Peoples,* 489 U.S. 346, 349 (1989)). Again, the Magistrate Judge found he made no effort to establish cause and prejudice for the failure to raise his claim in the state courts or that he can demonstrate actual innocence. [DE 41, n.5 at 344]. The Court has reviewed the record and agrees with Magistrate Judge's recommendation that Michael failed establish cause and prejudice or actual innocence to overcome procedural default for his failure to raise the *Doyle* claim. He did not meaningfully address or present these arguments.

The Court also agrees with the Magistrate Judge because Michael cannot establish actual prejudice.  In analyzing "actual prejudice," the focus is on whether actual prejudice arose from the claimed constitutional error. *Frady*, 456 U.S. at 170-171.  Thus, to satisfy the prejudice requirement, the petitioner must show that he was actually prejudiced as a result of the claimed constitutional error.  *Id.*  In addressing the "prejudice" requirement, the Court

should assume that a claim of constitutional magnitude has been stated, and then discern whether petitioner was actually prejudiced by the alleged error. *Id.* The prejudice must have worked to petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 170. If there is strong evidence of the petitioner's guilt and a lack of evidence for his claim, the actual prejudice requirement is not satisfied. *Id.* at 170-172. Here even assuming Detective Roby's statement violated the rule of *Doyle v. Ohio*, Michael cannot show actual prejudice because the Kentucky Supreme Court found his confessions, under the totality of the circumstances, and despite the improper statements, were voluntary. The Court overrules this objection. Because the Court has found that Michael procedurally defaulted this claim about *Doyle v. Ohio*, the Court will not consider it on the merits. The Court overrules this objection.

Michael also argues that the Magistrate Judge erred in determining that the Kentucky Supreme Court properly applied *Columbe* and *Lynumn* because the Magistrate Judge's decision on these grounds rests on her determination that Michael failed to assert actual innocence. [Objection 13, DE 45 at 377]. This is not correct. The Magistrate Judge analyzes the Kentucky Supreme Court's application of *Columbe* and *Lynumn* independently of her determination that Michael failed to claim actual innocence. [DE 41 at 344-49]. This objection is overruled.

### D. Objection to Warden's Statement About the Second Interview.

Michael moves for leave to object to the statement in the Warden's supplemental brief that the second interview was conducted by a different officer. [DE 56]. The Court grants Michael's motion insofar as his objection is filed as of record and is thus considered by the Court, but denies it insofar as he seeks to have the statement stricken from the record. The

Court has reviewed the record on the second interview and the first 35 minutes of it were conducted by Davis and then Roby joined the interview.   In ruling on Michael's motion to suppress, the Kentucky trial court described the second interview as follows:

> Michael was promptly arrested at his wife's residence, and he was returned to the Bardstown City Police Department for further questioning. A videotape then indicates that Michael spoke with Bardstown City Police Department Detective Lynn Davis (hereinafter "Davis") from 12:32 p.m. until 1:43 p.m. Roby was also present for some of this second interview.

[DE 55-1]. Thus, at least the first part of the interview was conducted solely by Detective Davis.  Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Pleadings are defined as (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer. Fed. R. Civ. P. 7(a).  The Warden's supplemental brief is not a pleading and thus it would not be appropriate to strike the statement. Even so, the Court understands Michael's objection, and is aware that Roby was later part of the second interview. The Kentucky Supreme Court was likewise aware of these facts and noted in it opinion that during the second interview, Michael was "questioned by Roby and Davis" in evaluating the totality of the circumstances.  [DE 17-2 at 145].  The objection is considered, but it is overruled.

> 2. *Michael is entitled to a Certificate of Appealability on the first two grounds in his petition.*

Finally, Michael objects to the Magistrate Judge's recommendation that a Certificate of Appealability ("COA") should be denied.  [DE 45 at 378].   A COA may issue only if the petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  "Where a district court has

rejected the constitutional claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. When "the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id*.

Here, the Court decided Michael's first two claims on the merits and third claim on procedural grounds. The Court believes that Michael should be granted a certificate of appealability on his first and second claims. These two claims may deserve further review because a reasonable jurist may debate whether it was reasonable for the state court to conclude Michael's confessions were voluntary given the inappropriate statements by police. The Court concludes no reasonable juries could find the dismissal of Michael's third claim debatable and thus a certificate of appealability is denied on that claim.

Thus, the Court **REJECTS** the R&R in part on this issue.

### IV.  Conclusion

For these and the reasons set forth above, **IT IS ORDERED** as follows:

1. The Court's **ADOPTS** the Magistrate Judge's Findings of Fact and Conclusions of Law [DE 41], except that the Court **REJECTS** the Magistrate Judge's Findings of Fact and Conclusions of Law on the issue of a certificate of appealability on the first and second grounds of the petition.

2. The Court **ADOPTS** the Magistrate Judge's Recommendations [DE 41] that Michael's Petition be denied.

3. The Court **OVERRULES** Michael's objections [DE 45] to the Magistrate Judge's Recommendations.

4. The Court **DISMISSES WITH PREJUDICE** Michael's Petition [DE 1].

5. The Court **GRANTS** the certificate of appeal on the first and second claims in the petition. A certificate of appealability for the third claim is **DENIED**.

6. Michael's Motion to File Objection [DE 56] is **GRANTED** insofar as the objection is permitted in the record and was considered by the Court.

6. The Court will enter a separate Judgment.

Rebecca Grady Jennings, District Judge

United States District Court

August 9, 2021